IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                No. CIV 11-1109 RB/KK

REAL PROPERTY LOCATED AT 6600 AND 6560
VENTURA ROAD SE, DEMING, NM, and 6545
EL PORTAL ROAD SE, DEMING, NM, INCLUDING
ALL STRUCTURES, APPURTENANCES AND
IMPROVEMENTS THEREON, CONTAINING 85 ACRES
MORE OR LESS, OWNED BY RICK AND
TERRI REESE, EL AL.,

        Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Plaintiff's Motion to Enforce Oral Settlement Agreement. (Doc. 127). Claimants Rick Reese and Terri Reese oppose the motion. Having considered the submissions of counsel and relevant law, the Court will **GRANT** this motion.

I.    **Background**

On August 24, 2011, Rick Reese, Terri Reese, Ryin Reese, and Remington Reese were charged in a thirty-count Indictment with: conspiracy to commit the crimes of making false statements in connection with the acquisition of firearms and smuggling goods from the United States, (Count 1); knowingly making false statements in connection with the acquisition of firearms, (Counts 2-10); smuggling firearms and ammunition from the United States, (Counts 11-28); aiding and abetting, (Counts 2-28); and conspiracy to commit money laundering, (Counts 29-30). *United States v. Rick Reese, et al.*, CR 11-2294 RB (criminal case). (Doc. 1.)

The Indictment included forfeiture allegations providing that, if they were convicted, Claimants would forfeit, *inter alia*, their interest in all firearms and ammunition involved in those offenses, the proceeds of the offenses, and the property used to facilitate the crimes, including the assets of New Deal Shooting Sports and real property located at 6600 Ventura Road SE, Deming, New Mexico, pursuant to 18 U.S.C. §§ 924(d), 981(a)(1)(C), and 982(a); 19 U.S.C. § 1595a(d); and 28 U.S.C. § 2461(c).  (*Id.*)

On August 26, 2011, United States Magistrate Judge William P. Lynch issued seizure warrants based on probable cause that authorized federal law enforcement officers to seize assets belonging to Old Ironsides, LLC, d/b/a New Deal Shooting Sports, owned by Rick Reese and located at 6600 Ventura Road SE, as well as funds from a bank account held in the name of Old Ironsides, LLC, d/b/a New Deal Shooting.  *See In the Matter of the Seizure Warrants*, 11-577 MR and 11-578 MR.

On December 19, 2011, the Government filed this matter with a Verified Complaint for Forfeiture in Rem against many of the same assets and based on the same grounds for forfeiture as listed in the Indictment and several additional legal grounds.  *See United States v. Real Property at 6600 & 6560 Ventura Rd. SE and 6545 El Portal Rd. SE in Deming, NM, et al.*, CIV 11-1109 RB/KK (civil matter). (Doc. 1.)  Rick Reese and Terri Reese filed verified notices of claim and answers.  (Docs. 29, 30, 32, 43.)  Ryin Reese and Remington Reese disclaimed interest in the subject property.  (Docs. 45, 46.)  On June 15, 2012, this matter was stayed on the Government's motion.  (Doc. 47.)  On November 16, 2012, United States Magistrate Judge Lorenzo F. Garcia extended the stay through sentencing in the criminal case.  (Doc. 47.)

The criminal case proceeded to trial on July 17, 2012.  (Doc. 347.)  At the close of the Government's case, on July 27, 2012, Defendants moved for judgment of acquittal on all counts,

pursuant to Federal Rule of Criminal Procedure 29.  (*Id.*)  On July 31, 2012, the Court granted the motion as to Counts 29 and 30, and denied the Motion as to all other counts.  (Doc. 360.) Counts 1-28 were submitted to the jury.  (Doc. 351.)  On August 1, 2012, as the jury was deliberating, the parties agreed that the Government would dismiss the forfeiture allegations in the criminal case and Defendants would waive their right to a jury trial in this matter.  (Doc. 350).  The parties memorialized this agreement on the record on the afternoon of August 1, 2012. (*Id.*)

On August 1, 2012, the jury returned a verdict finding Ryin Reese guilty on Counts 7 and 8 (knowingly making false statements in connection with the acquisition of firearms on June 15, 2011, and July 7, 2011), Rick Reese guilty on Count 9 (knowingly making false statements in connection with the acquisition of firearms on July 29, 2011), and Terri Reese guilty on Count 10 (knowingly making false statements in connection with the acquisition of firearms on July 29, 2011).  (Doc. 353.)  The jury acquitted Defendants on all other counts.  (*Id.*)

On December 31, 2012, Claimants filed a Motion for a New Trial in the criminal case. (Doc. 389.)  On February 1, 2013, the Court granted the Motion for a New Trial.  (Doc. 404.) The Government appealed the grant of the new trial.  (Doc. 425.)  On April 30, 2014, the Tenth Circuit reversed the order granting a new trial and remanded the matter for sentencing. (Doc. 464.)  On July 23, 2014, Claimants filed a petition for a writ of certiorari, which was denied on October 6, 2014.  (Docs. 467, 492.)  On November 5, 2014, the Court sentenced Rick Reese, Terri Reese, and Ryin Reese to time served.  (Docs. 505, 506, 507.)

On November 19, 2014, United States Magistrate Judge Kirtan Khalsa held a status conference in the civil matter and set discovery deadlines.  (Docs. 91 and 92.)  The Court set the matter for trial on August 24, 2015.  (Doc. 115.)  Judge Khalsa held several case management

conferences and the parties proceeded with discovery.  On March 10, 2015, Judge Khalsa held a

settlement conference.  (Doc. 123.)  Claimant Rick Reese and his attorney, Robert Gorence,

Terri Reese and her attorney Jason Bowles, as well as counsel for Plaintiff participated in the

settlement conference.  (*Id.*)

After five hours of negotiations, the parties reached a settlement agreement.  (*Id.*)  The

settlement agreement was memorialized in Judge Khalsa's courtroom on the afternoon of March

10, 2015.  (Transcript of Rule 16 Settlement Conference, Doc. 126.)  Judge Khalsa stated the

terms of the settlement agreement on the record and asked the parties to affirm, or if they "take

issue with anything . . . to raise that here."  (Tr. at 3.)

Judge Khalsa stated:

The claimants agree to release all claims and to allow the forfeiture by the
Government of the following property:

$11,019.92 plus any interest that has accrued on all of the money that was seized;

All of the firearms;

All ammunition that was seized from the business, any of which is listed on pages
one through 25 of Exhibit 1 to the settlement proceeding. And I'm marking this as
Exhibit 1, and you all have copies of this document that I've provided to you.

Seventy-nine canisters of the powder plus the one canister that was designated as
black powder;

The body armor;

The reloading bench; and

All of the magazines.

In exchange for the claimants' agreement to release all claims to that property just
identified, the Government agrees to the return of the following property:

The real property identified in the complaint;

All gold and silver coins;

535 canisters of powder;

Remaining cash that was seized with the exclusion of the $11,019.92 and any interest;

The four vehicles;

Gun safes; and

The ammunition that was seized from outside of the business, which includes any ammunition seized from the residence and the garage and apartment identified in Exhibit 1 starting at page 42. (Doc. 126, Tr. at 4.)

Claimant Rick Reese made the following statements on the record:

**MR. RICK REESE:** Yes, your Honor, I agree to that, those terms. Thank you, ma'am.

**JUDGE KHALSA:** Okay. And, Mr. Reese, you were present throughout the proceedings, and you were advised throughout these proceedings by your counsel, correct?

**MR. RICK REESE:** That's correct, your Honor.

**JUDGE KHALSA:** All right. And all of the terms that have been stated on the record are your understanding of the agreement that you have with the Government, correct?

**MR. RICK REESE:** That's correct, your Honor. Thank you.
(Doc. 126, Tr. at 8.)

Claimant Terri Reese made the following statements on the record:

**MR. BOWLES:** And Mrs. Reese also states on the record that she agrees to those terms, your Honor.

**MS. TERRI REESE:** Yes, ma'am, I do.

**JUDGE KHALSA:** Okay. And Ms. Reese, I want to ask you the same questions I asked your husband. You were present all day throughout these negotiations and assisted and advised by your counsel, correct?

**MS. TERRI REESE:** Yes, ma'am. We thank you.

**JUDGE KHALSA:** And do you understand the terms of the agreement?

5

**MS. TERRI REESE:** Yes, ma'am.

**JUDGE KHALSA:** And this is your agreement with the Government.

**MS. TERRI REESE:** Yes, ma'am.
(Doc. 126, Tr. at 13.)

Plaintiff drafted and transmitted closing documents to Claimants on March 16, 2015. Claimants did not approve the proposed closing documents.  (Doc. 127.)  Judge Khalsa held a telephonic status conference on March 26, 2015.  (Doc. 128.)  At the status conference, Mr. Gorence stated that Claimants believed that there were inaccuracies with respect to ammunition on the spreadsheet referred to as Exhibit 1 during the March 10, 2015 settlement conference. (*Id*.)

Plaintiff moves to enforce the settlement agreement.  (Doc. 127.)  Claimants oppose the motion. (Doc. 129.)  In their response, Claimants do not dispute that a settlement agreement was reached at the March 10, 2015 conference.  (*Id.*)  However, Claimants contend that Exhibit 1 does not accurately identify the ammunition that was seized from outside the store, the settlement agreement should include a term about the condition of the property, and the settlement agreement does not cover all of the seized property.  (*Id.*)  In reply, Plaintiff states that the terms of the settlement agreement are clear and should be enforced.  (Doc. 131.)

## II.    Standard

"A trial court has the power to summarily enforce a settlement agreement entered by the litigants while the litigation is pending before it."  *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993).  "[W]here material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing."  *Id.* at 1496-97.  However, an evidentiary hearing is not required where an agreement is clear and

unambiguous, and no issue of fact is present.  *See Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1975).  "Issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law."  *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004); *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000).

## III.   Discussion

New Mexico law considers a settlement agreement to be a "species of contract," and recognizes strong public policy in favor of the "freedom to contract."  *Builders Contract Interiors, Inc. v. Hi-Lo Indus., Inc.*, 134 P.3d 795, 798 (N.M. Ct. App. 2006) (*quoting State ex rel. Udall v. Colonial Penn Ins. Co.*, 812 P.2d 777, 780 (N.M. 1991)).  "It is the policy of the law and of the State of New Mexico to favor settlement agreements."  *Navajo Tribe of Indians v. Hanosh Chevrolet-Buick, Inc.*, 749 P.2d 90, 92 (N.M. 1988).  Because settlement agreements are highly favored, a party seeking relief from a settlement has the burden of persuasion.  *See Marrujo v. Chavez*, 426 P.2d 199, 201 (N.M. 1967); *Gonzales v. Atnip*, 692 P.2d 1343, 1344 (N.M. Ct. App. 1984).

New Mexico courts have consistently enforced clear contractual obligations.  *See United Props. Ltd. v. Walgreen Props., Inc.*, 82 P.3d 535, 537 (N.M. Ct. App. 2003).  "Parties to a contract agree to be bound by its provisions and must accept the burdens of the contract along with the benefits."  *Nearburg v. Yates Petroleum Corp.*, 943 P.2d 560, 569 (N.M. Ct. App. 1997) (citation omitted).  "When a contract was freely entered into by parties negotiating at arm's length, the duty of the courts is ordinarily to enforce the terms of the contract which the parties made for themselves."  *Id.*  New Mexico law allows "equity to interfere with this consistency only when 'well-defined equitable exceptions, such as unconscionability, mistake, fraud, or illegality" justify deviation from the parties' contract."  *Id.*  "In the absence of fraud,

unconscionability, or other grossly inequitable conduct, New Mexico courts do not have discretion . . . to interfere with contractual rights and remedies which go to the heart of the bargain." *Winrock Inn Co. v. Prudential Ins. Co. of Am.*, 928 P.2d 947, 956 (N.M. Ct. App. 1996).

Claimants rely on the theories of mistake and inequitable conduct in support of their attempt to reform the settlement agreement. Under New Mexico law, a court is permitted to reform a contract upon finding "a mutual mistake; that is where there has been a meeting of minds, an agreement actually entered into, but the contract, deed, settlement, or other instrument, in its written form, does not express what was really intended by the parties thereto." *C.R. Anthony Co. v. Loretto Mall Partners*, 817 P.2d 238, 245 (N.M. 1991) (*citing Cleveland v. Bateman*, 158 P. 648 (N.M. 1915)). Additionally, an agreement may be reformed if there has been mutual mistake or a unilateral mistake accompanied by fraud or inequitable conduct by the other party. *See Kimberly, Inc. v. Hays*, 537 P.2d 1402, 1405-06 (N.M. 1975).

"For a mistake to be mutual and common to both parties, it must appear that both parties have done what neither intended." *Cargill v. Sherrod*, 631 P.2d 726, 728 (N.M. 1981) (citing *Sierra Blanca Sales Co., Inc. v. Newco Industries, Inc.*, 505 P.2d 867 (N.M. Ct. App. 1972)). The well-established rule is that, when a written contract "fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement." Restatement (Second) of Contracts § 155, at 406. Reformation is thus available only when the parties reach an agreement but then "fail to express it correctly in the writing." *Id.*, Comment *a,* at 406. The party seeking to reform an agreement must prove by clear and convincing evidence that a mutual mistake occurred. *Twin Forks Ranch, Inc. v. Brooks*, 964 P.2d 838, 841 (N.M. Ct. App. 1998) (*citing Butler v.*

*Butler*, 450 P.2d 922, 924 (N.M. 1969); *Wright v. Brem*, 467 P.2d 736, 737 (N.M. Ct. App. 1970)).

In this case, the undisputed facts demonstrate that Claimants have not met their burden to show a mutual mistake or inequitable conduct.  The transcript of the proceedings before Judge Khalsa establishes that there was no mistake in reducing the settlement agreement to writing.  In support of their claim of mistake, Claimants contend that they "understood the amount and character of ammunition that would be returned to them to be much greater than what is reflected in Exhibit 1."  (Doc. 129 at 5.)  "Claimants relied on their knowledge and understanding of what ammunition was seized from the store and what was seized from outside the store."  (Doc. 129 at 4.)  According to Claimants, Exhibit 1 was not included in the settlement conference binder provided by Plaintiff on the day of the settlement conference.  (Doc. 129 at 2.)  Contradicting this assertion, Claimants also assert that a copy of Exhibit 1 was given to them but it was missing pages 21-24 and included an additional page.  (*Id.*)  Claimants lament that much of the time during the settlement conference was spent on negotiations over the firearms and they "did not have enough time to review the binder for accuracy when it was given to them" on the day of the settlement conference.  (*Id.*)  None of these assertions would refute the express declarations in the transcript.  Additionally, Claimants wish to insert a new term into the settlement agreement concerning the condition of the property.  (Doc. 129 at 7.)  Finally, Claimants want to extend the settlement agreement to encompass property that was not included in the Complaint, such as scopes, knives, and bayonets.  (Doc. 129-3.)

Claimants' allegations that they did not understand the terms of the settlement agreement are belied by the transcript wherein Judge Khalsa expressly identified the ammunition Claimants agreed to forfeit as "[a]ll ammunition that was seized from the business, any of which is listed on

pages one through 25 of Exhibit 1 to the settlement proceeding." (Doc. 126 at 4.) Additionally, Judge Khalsa recited that the parties had agreed that "[t]he ammunition that was seized from outside of the business, which includes any ammunition seized from the residence and the garage and apartment identified in Exhibit 1 starting at page 42" would be returned to Claimants. (Doc. 126, Tr. at 4.) Neither Claimants nor their attorneys objected to these statements. In their brief, "Claimants relied on their knowledge and understanding of what ammunition was seized from the store and what was seized from outside the store." (Doc. 129 at 4.) However, it bears underscoring that Claimants did not reveal any contrary knowledge or understanding to Judge Khalsa and Plaintiff and their attorneys did not object to the terms of the settlement agreement as stated on the record by Judge Khalsa.

Claimants contend that the settlement agreement contains contradictory terms because it does not reflect their own undisclosed understanding of the location of the ammunition. However, an understanding known only to the Claimants does not qualify as a mutual mistake. *See Cargill v. Sherrod*, 631 P.2d at 728. The settlement agreement on its face is not contradictory. It is clear that the parties in reaching the settlement agreement never intended that all of the ammunition would be returned, but only the ammunition that was recovered from outside the store as identified in Exhibit 1.

Claimants' assertion that they did not have access to Exhibit 1 is undercut by the transcript. Judge Khalsa confirmed that all parties had copies of Exhibit 1 by stating "I'm marking this as Exhibit 1, and you all have copies of this document that I've provided to you." (*Id.*) No one objected to this statement. In their response brief, Claimants contend that they did not have enough time to review Exhibit 1. However, the transcript contains no indication that Claimants felt rushed or needed additional time to review Exhibit 1. In any event, the fact that

Claimants felt rushed is not a basis for relief as Claimants could have and should have reviewed Exhibit 1 at the settlement conference or informed Judge Khalsa that they needed additional time to review Exhibit 1.

Claimants wish to insert a new term into the settlement agreement concerning the condition of the property.  (Doc. 129 at 7.)  Claimants' assertion that the agreement included a term that the property would be returned in the same condition in which it was seized is not supported by the record.  The only reference to the condition of the property in the transcript was when Mr. Gorence said: "We do want to make sure that the cars are in the condition that they were seized. But I don't think that's going to be an issue."  (Doc. 126, Tr. at 8.)  This unilateral statement about the condition of the property was never accepted by Plaintiff and it was not included in the terms of the settlement agreement.

Finally, Claimants want to extend the settlement agreement to encompass property that was not included in the Complaint, such as scopes, knives, and bayonets.  (Doc. 129-3.) Notably, Judge Khalsa stated on the record that the settlement agreement covers "the property that's set forth in the complaint."  (Doc. 126 at 15.)  Mr. Gorence agreed that property seized in the criminal proceeding "would be outside the scope of what's the subject matter of this case." (*Id.*)  The settlement agreement covers only the property specifically identified in the complaint; it does not cover any property that was not included in this case.

Neither Mr. Gorence nor Mr. Bowles mentioned any deficiency with respect to Exhibit 1. Indeed, Claimant Rick Reese stated: "I agree to that, those terms."  (*Id.*) Mr. Bowles, counsel for Terri Reese, stated that "Mrs. Reese also states on the record that she agrees to those terms, your Honor."  (Doc. 126, Tr. at 13.)  Judge Khalsa asked Terri Reese whether she was "present all day throughout these negotiations and assisted and advised by [her] counsel, correct?"  (*Id.*)  Terri

Reese responded: "Yes, ma'am." (*Id.*)  Judge Khalsa asked Terri Reese: "And do you understand the terms of the agreement?  Terri Reese responded: "Yes, ma'am." (*Id.*)  The declarations of both Claimants in open court establish that Claimants agreed to the terms of the settlement agreement. Claimants were represented by counsel during the negotiations and when Judge Khalsa stated the terms on the record.  The transcript demonstrates that both Claimants knowingly and voluntarily agreed to the terms of the settlement agreement.  Claimants have not met their burden to demonstrate mistake, inequitable conduct, or any other ground that would allow for reformation of the clear and unambiguous terms of the settlement agreement.

## IV.     Conclusion

The terms of the settlement agreement are set out in the transcript.  Claimants have not shown that the settlement agreement was created under conditions of fraud, illegality, mistake, or unconscionability.   Therefore, the Court will not interfere with the terms of the settlement agreement as memorialized in the transcript of the proceedings before Judge Khalsa.

**THEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion to Enforce Oral Settlement Agreement (Doc. 127) is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties will complete closing documents within ten days.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**